IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 119-113 |
| | ) | |
| MARIO HUBBARD | ) | |
| CHRISTOPHER CHINN | ) | |
| QUIEATON FREEMAN | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Defendants move to suppress evidence obtained from three residences pursuant to search warrants they contend to be invalid because of alleged deficiencies in the supporting affidavits. (Doc. nos. 94, 162, 179.) Upon consideration of the briefs, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress be **DENIED**.

**I.    FACTS**

On September 12, 2019, the grand jury in the Southern District of Georgia charged Defendants Mario Hubbard, Christopher Chinn, and Quieaton Freeman, along with co-defendants Terrance Freeman, Timothy Myers, Timothy Reid, Willie Bass, and Tyquain Freeman, with conspiracy to distribute and distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. no. 3.) Approximately eleven months prior to indictment, on October 18, 2018, the Richmond County Superior Court issued eleven warrants authorizing the search of eleven residences, including that of Defendant Chinn.

(Doc. no. 94, p. 1; Concepcion Search Warrant Aff. 1, doc. no. 172-4.[1]) Supporting the eleven warrants was the affidavit of Richmond County Sheriff's Office Investigator Julio Concepcion.  (See Concepcion Search Warrant Aff. 1.)  Approximately one month later, Investigator Concepcion sought six additional search warrants, attaching substantially the same affidavit as in the October 18th search warrants, for the search of six residences, including that of Defendant Freeman.  (Doc. no. 179; Concepcion Search Warrant Aff. 4, doc. no. 186-6.)  Defendants Chinn and Freeman contend in their suppression motions Investigator Concepcion's affidavits failed to establish probable cause because they contained conclusory allegations and relied on stale information.  (Doc. nos. 94, 179.)

In relation to Defendant Hubbard, on September 19, 2019, the Magistrate Court of Cobb County, Georgia, authorized the search of Defendant Hubbard's residence based on a supporting affidavit by Dekalb County Police Detective Carman Greer.  (Doc. no. 162.) Defendant Hubbard contends Detective Greer's affidavit is deficient because it fails to establish probable cause and fails to establish a nexus between Defendant Hubbard, the address, and the criminal activity.  (Id.)  The Court describes the affidavits of Investigator Concepcion and Detective Greer in turn below.

    **A.**    **Affidavits of Investigator Concepcion for Defendants Chinn and Freeman**

Investigator Concepcion opens the probable cause section of his October 18, 2018 affidavit incorporating by reference two lengthy affidavits he previously submitted in support

---

[1]On March 10, 2020, the government to filed redacted versions of Exhibit A to the government's response to Defendant Chinn's motion to suppress, (doc. no. 172-4), and Exhibits A through C of the government's response to Defendant Quieaton Freeman's motion to suppress, (doc. nos. 186-6, 186-7, 186-8).  (See doc. no. 197.)

of warrants issued on September 11 and 20, 2018, authorizing intercepts of phone numbers for Terrence Freeman and Timothy Myers. (Concepcion Search Warrant Aff. 1, pp. 1-4; see Concepcion Search Warrant Aff. 2, doc. no. 172-5; Concepcion Search Warrant Aff. 3, doc. no. 172-6.) Investigator Concepcion then explained the investigation to date, which included wire intercepts, surveillances, controlled purchases and cooperating sources, netted information showing Terrance Freeman and others "operate an organization that is involved in the sale and distribution of cocaine and marijuana, in Richmond County and Columbia County, Metro Atlanta [sic] area, Georgia." (Concepcion Search Warrant Aff. 1, p. 4.)

Next, Investigator Concepcion described the following information gleaned from three confidential sources ("CS"). CS1 served as an informant from June to September 2014, in apparent exchange for authorities dropping a cocaine distribution charge. (Id.) Investigator Concepcion described CS1 as reliable because information CS1 provided was corroborated, led to seizure of controlled substances, and issuance of a warrant. (Id.) CS1 alleged firsthand knowledge, over an unspecified two-month period, of cocaine and marijuana trafficking in the Augusta area by Terrance Freeman, Quieaton Freeman, Tyquian Freeman, and others. (Id. at 5.) Terrance Freeman stored large amounts of cocaine at 2126 Veterans Drive. (Id.)

CS2, an informant since May 2017, was considered reliable because information CS2 provided was corroborated by independent investigation and led to charges in two cases and the seizure of narcotics and money. (Id.) CS2 alleged personal knowledge of Terrance Freeman and Willie Antonio Bass trafficking large amounts of marijuana and cocaine in the Augusta area. (Id.) CS2 alleged Terrance Freeman and his co-conspirators commonly

switched cars to avoid detection by law enforcement, which officers corroborated.  (Id.)  In the six months prior to the affidavit, CS2 purchased half-ounce quantities of powder cocaine from Mr. Bass three times per week.  (Id. at 6.)  CS3 completed seventeen controlled buys during the period of January to September 2018 from Terrance Freeman, Quieaton Freeman, Katwana Johnson, Timothy Reid, and Willie Bass.  (Id. at 6-7.)

For each of the eleven residences to be searched, Investigator Concepcion provided a specific factual recitation, including the following recitation for the residence of Defendant Chinn in the October 18, 2018 affidavit:

> **2915 CUMBERLAND DRIVE, AUGUSTA GEORGIA 30906**
>
> 2915 Cumberland Drive, Augusta Georgia 30906, is believed to be the primary residence utilized by Christopher CHINN, a cocaine supplier of the targeted organization.  This Affiant believes that this residence is utilized as both a storage location and a distribution point for illegal drugs and large amounts of United States Currency. This Affiant along with other Investigators assigned to this case have utilized surveillance and observed Christopher CHINN and Timothy MYERS at the residence of 2915 Cumberland Drive, Augusta Georgia.  Officer's [sic] also observed Christopher CHINN and Timothy MYERS conducting hand to hand transaction [sic] at the residence.  During the operation Timothy MYERS purchased approximately two [to] three kilograms of cocaine from Terrance FREEMAN.  After the transaction was conducted, MYERS would travel to CHINN's residence and deliver a large amount of cocaine.  This Affiant also received Information from the confidential source that CHINN sells marijuana from the residence on 2915 Cumberland Drive, Augusta Georgia.  During surveillance, Terrell MYERS was observed traveling to 2915 Cumberland Drive, and meeting with CHINN where it's believed that he purchased marijuana.  Shortly after Terrell MYERS traveled back to 2827 Glenn Hills Circle and was observed smoking a marijuana cigar in the front yard.

(Id. at 16.)

Investigator Concepcion's November 26, 2018 affidavit included the following recitation for the residence of Defendant Quieaton Freeman.

> **2109 RIDGECREST DRIVE, AUGUSTA GEORGIA**
>
> 2109 Ridgecrest Drive, Augusta Georgia is believed to be the primary residence utilized by Quieaton FREEMAN, a leader of the targeted organization. This Affiant believes that this residence is utilized as both a storage location and a distribution point for illegal drugs and large amounts of United States Currency. This Affiant along with other Investigators assigned to this case have utilized surveillance and observed Willie Antonio BASS, Terrance FREEMAN, Quieaton FREEMAN, and his co-conspirators going in and out of the listed residence after leaving 2126 Veterans Drive, Augusta Georgia. Officer's [sic] also observed Willie BASS on numerous occasions travel to 950 Stevens Creek Road apartment N-1 where he would stay [sic] night. It should be noted that these apartment complexes are right next to each other. During surveillance Officer's [sic] observed both Quieaton FREEMAN and Willie BASS meeting with other unknown persons and conducting hand to hand transactions at the Circle K 1947 Gordon Highway then traveling back [to] the apartments of 950 Stevens Creek Road Apt N-1 and also 2109 Ridgecrest Drive, Augusta GA, 30909.

(Concepcion Search Warrant Aff. 4, pp. 10-11.)  The affidavit further stated that, on October 18, 2018, at 9:05 p.m., officers observed Defendant Quieaton Freeman arrive at 2827 Glenn Hills Circle and meet with Timothy Myers.  (Id. at 15.)  Defendant Quieaton Freeman left 2827 Glenn Hills Circle shortly thereafter, and Mr. Myers traveled to 1730 Sibley Road, Apt. 14-E, Augusta, Georgia after that.  (Id. at 15-16.)  Approximately fifteen minutes later at 9:30 p.m., officers searched the Sibley Road apartment and found more than $6,000, cocaine, and weight scales.  (Id. at 16.)

    **B.**    **Affidavit of Detective Greer for Defendant Hubbard**

Detective Greer's supporting affidavit stated in full as follows:

> Your Affiant Detective Carmen Greer, is a sworn POST certified Police Officer in the State of Georgia, employed by [the] DeKalb County Police Department.  Your Affiant has been a POST certified Officer since January 2008.  Your Affiant is currently serving as a H.I.D.T.A. Task force detective- High Intensity Drug Trafficking Areas.  Your Affiant has initiated and/or participated in several drug arrests and narcotics investigations utilizing

various techniques including but not limited to[:] use of confidential informants, undercover drug buys, surveillance operations, trash pull operations and etcetera. Your Affiant has received over 900 hours of POST certified training, including specialized training in narcotics investigations. Your affiant seeks issuance of a search warrant based on the following probable cause[:]

On September 19, 2019, Thursday the DeKalb County H.I.D.T.A. Task force assisted Sergeant Julio Concepcion with the Richmond County Narcotics Division arrest Mario Hubbard upon a Federal Indictment 21 USC 846 Conspiracy to possess with intent to distribute and to distribute controlled substances (Cocaine, Marijuana and Cocaine Base). Mario was the subject of a Title III wire investigation which the H.I.D.T.A. Task force investigated. Based on the investigation Mario was identified as an individual involved with receiving and distributing drug proceeds in the form of United States currency for the operation for which illegal drugs were sold, transported, manufactured and distributed during the investigation while listening to the phone calls Mario met with co-conspirators who we later arrested and in possession of illegal narcotics and U.S. currency.

During the ongoing participation of the wire surveillance there was a Global positioning tracker placed on Mario Hubbard's vehicle. The GPS tracker later confirmed that Mario Hubbard would frequent this location overnight along with another location in DeKalb County. The GPS tracker coupled with phone calls from the Title III confirmed that Mario would travel to and from this location while conducting drug transactions and proceeds.

On today's date DeKalb County H.I.D.T.A. conducted surveillance at Mario's residence of 3629 Hester Avenue, Smyrna, GA 30080. Mario was observed entering this residence. Due to a trash pull conducted on a prior surveillance there was mail located with Mario Hubbard's name and this address on it. Further investigation identified Mario Hubbard's name on the tax and water bill for the location. Today's date Mario was observed leaving the residence wearing a white hat and white shirt in which he has worn during prior dates of surveillance. He was seen entering his residence and leaving out within 5 minutes.

DeKalb County H.I.D.T.A. Task force initiated a traffic stop and detained the subject. Mario advised officers that he was leaving DeKalb County. Julio Concepcion arrived and searched the vehicle and identified a PNC bank statement with Mario Hubbard's [address] of 3629 Hester Avenue on it. While detaining Mario we located a total of six cell phones in his vehicle on the front passenger seat. Based on the overall investigation it has been

determined that he utilizes multiples cell phone to make illegal transactions[.] [T]herefore[,] I would also like any documents involving cell phones such as carriers, numbers, contracts, billing and statements which may also be at the residence.

During drug trafficking and money laundering investigations, Detective Greer has observed on numerous occasions, drug traffickers using telephones in furtherance of their illegal activities. Detective Greer has analyzed telephone toll records and other records as well as debriefed informants regarding the use of telephones in other drug trafficking organizations under investigation. Consequently, Detective Greer is familiar with the ways in which drug traffickers operate their illegal enterprises, including, but not limited to, their use of cellular telephones and of digital display paging devices, and their use of numerical codes and code words to conduct their transactions. Detective Greer knows that drug trafficking is often furthered by utilizing multiple cellular telephones, multiple isolated contacts, pre-paid cellular phones, and phones designed to be used only for "incoming" or "outgoing" calls, which is also known as compartmentalization. Detective Greer knows that drug traffickers frequently use cellular telephones subscribed to in false names and/or to false or nonexistent addresses. The use of the telephones in this manner is designed to help avoid detection by law enforcement. Based on my experience with search warrants involving person's involved in crimes related to drug activity they have kept several cell phones and have had multiple numbers in which they keep.

Except where otherwise noted, the information set forth in this affidavit has been provided to me by law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have reviewed. Such statements are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where otherwise indicated, does not set forth my personal observations, but rather has been provided by other law enforcement officers who conducted such surveillance.

Due to this information I would respectfully request a search warrant on Mario Hubbard's residence.

(Greer Search Warrant Aff. 1, pp. 3-4.)

## II. DISCUSSION

### A. No Evidentiary Hearing is Necessary

The decision to grant or deny a request for an evidentiary hearing on a motion to suppress is left to the Court's discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000); United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984). "[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion." United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of evidentiary hearing on motion to suppress) (citation omitted). Thus, the burden is on the defendant to allege facts that would, if proven true, entitle him to relief. United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985). A district court should conduct an evidentiary hearing when the briefs and supporting exhibits are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." Id. (citations omitted). Here, there is no reason for a hearing because (1) the motions attack the validity of warrants and their supporting affidavits, and a ruling can be made based on a plain reading of these documents; and (2) there is no substantial claim because the facts alleged by Defendants, even if proven, would not entitle them to relief.

### B. Fourth Amendment Framework

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, a search warrant must: (1) be based on probable

8

cause; (2) be supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the items to be seized.  See id.; United States v. Carson, 520 F. App'x 874, 888 (11th Cir. 2013).

In deciding whether to sign a search warrant, the issuing judge must make a "practical, common sense decision" whether, given all the information in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]"  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 462 U.S. at 232).  The validity of the warrant is evaluated based on the totality of the circumstances.  See id.; see also United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

The supporting affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013) (citing United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)).  "[T]he affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999)).  The burden of establishing a link between the defendant's residence and alleged

9

criminal activity is low because, as the Kapordelis court explained, "few places are more convenient than one's residence for use in planning and hiding fruits of a crime." Id. (quoting United States v. Green, 634 F.2d 222, 226 (5th Cir. 1981)[2]); see also United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008) (holding evidence of defendant possessing contraband of type normally expected to be hidden in residence will support search).

In the Eleventh Circuit, a court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011) (citing Brundidge, 170 F.3d at 1352). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

### C. The Suppression Motions by Defendants Chinn and Freeman Should Be Denied Because Investigator Concepcion's Affidavits Established Probable Cause and Were Neither Based On Stale Information Nor Conclusory

The facts set forth in Investigator Concepcion's affidavits establish a firm and substantial basis for finding probable cause that evidence of drug trafficking would be found by searching the residences of Defendants Chinn and Quieaton Freeman. The affidavits detail the findings of an extensive, year-long investigation that (1) included three confidential sources, seventeen controlled buys of illegal narcotics, officer surveillance, and phone intercepts; and (2) identified alleged co-conspirators, including Defendants Freeman and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Chinn, and the residences associated with the trafficking activity. (Concepcion Search Warrant Aff. 1, pp. 1-25.)

Concerning Defendant Chinn, Investigator Concepcion recounted (1) surveillance of Defendants Chinn and Timothy Meyers conducting hand to hand transactions at 2915 Cumberland Drive; (2) surveillance of Defendant Myers buying three kilograms of cocaine from Defendant Terrance Freeman and transporting it to 2915 Cumberland Drive; and (3) an unspecified confidential informant's tip that Defendant Chinn sells marijuana from the residence, which was corroborated by officer surveillance. (Id. at 16.)

Defendant Chinn argues the October 18th affidavit was stale because it failed to include specific dates. Warrant applications based on stale information lack probable cause because they fail to show similar or other improper conduct is continuing. United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994), *modified on other grounds by* United States v. Toler, 144 F.3d 1423 (11th Cir. 1998). "In considering the nature of the crime, [courts] distinguish between criminal activity that is 'protracted and continuous' and criminal activity that is 'isolated.' If the affidavit 'recites activity indicating protracted or continuous conduct, time is of less significance.'" United States v. Schimmel, 317 F. App'x 906, 909 (11th Cir. 2009) (internal citations omitted) (quoting United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000)).

Because "[p]rotracted and continuous activity is inherent in large-scale drug trafficking operations," time is less significant here. Id. (quoting United States v. Bascaro, 742 F.2d 1335, 1345-46 (11th Cir.1984), *abrogated on other grounds by* United States v. Lewis, 492 F.3d 1219 (11th Cir. 2007)). Even with time being less significant, the October

11

18th affidavit explains (1) the investigation began in September 2017; (2) the eleven controlled buys occurred from January to September 2018, just one month before the October 18th affidavit; and (3) surveillance of Terrance Freeman and Timothy Myers's phones began in September 2018.  (Concepcion Search Warrant Aff. 1, pp. 1-8.)  There is no staleness concern in this context of an extensive and ongoing investigation into a broad drug trafficking organization.  See Harris, 20 F.3d at 450-51 (finding affidavit detailing information two years old not stale because "the affidavit nonetheless alleged a longstanding and protracted criminal conspiracy" and officers updated old information through surveillance).

Defendant Chinn next argues the October 18th affidavit is conclusory because it (1) generally alleges Defendant Chinn is a cocaine supplier; (2) generally alleges 2915 Cumberland Drive is used for drug activity; (3) alleges hand to hand transactions without specifying whether officers could see the illegal drugs being exchanged; and (4) fails to specify which confidential source alleged Defendant Chinn sold marijuana.  Picking apart the affidavit in this fashion allows for the construction of a facially credible argument.  However, when properly viewed through the totality of the circumstances, the affidavit details an ongoing drug conspiracy of which by all described appearances Defendant Chinn is an active member.  Even the summary allegations highlighted by Defendant Chinn are sufficient to establish probable cause.  See Jiminez, 224 F.3d at 1248-49 (holding information contained in affidavit not conclusory where affidavit summarized evidence gained through wiretap).

Defendant Chinn further argues the allegations concerning 2915 Cumberland Drive are conclusory because defense counsel has been unable to find any extrinsic evidence in

12

discovery substantiating Investigator Concepcion's assertions in the affidavit. However, "affidavits supporting warrants are presumptively valid," and when seeking a warrant to search a residence, the affidavit need only "supply the magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crime at [the residence]." United States v. Lebowitz, 676 F.3d 1000, 1010-11 (11th Cir. 2012) (citing United States v. Gamory, 635 F.3d 480, 490 (11th Cir. 2011); quoting Kapordelis, 569 F.3d at 1310).

Concerning Defendant Quieaton Freeman and his residence, the November 26th affidavit alleges (1) his direct involvement in two controlled purchases in January and February 2018; (2) CS1's identification of Defendant Quieaton Freeman as a marijuana and cocaine trafficker; (3) surveillance observations of heavy foot traffic at 2109 Ridgecrest Drive by Defendants Bass, Quieaton Freeman, and Terrance Freeman after leaving another residence suspected to be a part of the trafficking network; and (4) surveillance observations of Defendant Quieaton Freeman conducting hand to hand transactions with Defendant Bass and returning directly to 2109 Ridgecrest Drive. (Concepcion Search Warrant Aff. 4.) These allegations are more than sufficient to establish probable cause.

Defendant Freeman argues the warrant is defective because the listed address of 2109 Ridgecrest Drive is incorrect, and the correct address is 926 Stevens Creek Road, Apt 2109. (Doc. no. 179.) However, 2109 Ridgecrest Drive is the address for apartment number 2109 located within a subdivision at 926 Stevens Creek Road. (See doc. no. 186, pp. 6-7.) Even if Defendant Freeman could show the Stevens Creek Road address is a more accurate address than the Ridgecrest Drive address, he has not shown the Ridgecrest Drive address is incorrect or that officers searched the wrong apartment. See United States v. Haribson, 523 F. App'x

569, 572-574 (11th Cir. 2013) (holding search warrants do not need same "specificity sought by conveyancers" and finding search warrant sufficiently particularized where officers were familiar with property and warrant included detailed physical description).

Defendant Freeman also argues the warrant is fatally flawed because Investigator Concepcion signed only one of the six identical affidavits in support of the search warrants. Investigator Concepcion swore to all six supporting affidavits in the presence of Richmond County Superior Court Judge Daniel J. Craig, and while Investigator Concepcion signed only one of the six identical affidavits, Judge Craig countersigned all six affidavits and signed all six warrants. (Doc. nos. 186-4, 186-5; compare Concepcion Search Warrant Aff. 4; with doc. no. 186-8.) Several courts have addressed this same issue and held the technical flaw of a missing signature on the affidavit by the affiant does not invalidate the warrant where, as here, the affiant was sworn by the issuing judge. See United States v. Mendoza, 491 F.2d 534, 538-39 (5th Cir. 1974) (finding no fatal error where affiant failed to sign affidavit because affiant swore to validity of affidavit in presence of issuing judge); United States v. Henry, 939 F. Supp. 2d 1279, 1289-90 (N.D. Ga. 2013) (finding omission of affiant signature not fatal "where prior to the search the affiant was sworn by the issuing judge at the time the warrant was issued."). While the absence of the affiant's signature may violate the requirement of a signed affidavit implicit in Federal Rule of Criminal Procedure 41, it does not rise to the level of a Fourth Amendment violation that would invalidate the warrant. See United States v. Lyons, 740 F.3d 702, 724-27 (1st Cir. 2014) (holding issuing judge's failure to sign warrant violated Rule 4(b)(1)(D) but did not rise to level of Fourth Amendment

violation). Lastly, such an inadvertent, technical error falls safely under the Leon good faith exception as discussed in § II.F., infra.

Defendant Freeman argues there is no nexus between him and the searched residence while at the same time conceding he lived at the residence for approximately two months and was found sleeping at the residence on the day of the search. (Doc. no. 179, pp. 1-2.) Although Defendant Freeman states he relocated to his mother's home in Atlanta, Georgia, he provides no dates for this move. The affidavit alleged Defendant Freeman resided at this address, and by his own admission there was a sufficient link between Defendant Freeman, and 2109 Ridgecrest Drive. See Mitchell, 503 F. App'x at 754; Kapordelis, 569 F.3d at 1310.

### D.  Defendant Hubbard's Suppression Motion Should Be Denied Because Detective Greer's Affidavit Established Probable Cause

Defendant Hubbard argues Detective Greer's affidavit fails to establish probable cause because it does not connect him to the residence or the residence to the illegal activity. The Court disagrees. At the time of the affidavit, Defendant Hubbard was already under indictment and in custody for drug trafficking, and a Title III wire investigation revealed Defendant Hubbard received and distributed monetary proceeds from the drug trafficking scheme and met with his indicted co-conspirators. (Greer Search Warrant Aff. 1, pp. 3-4.) The affidavit firmly established the link between Defendant Hubbard and 3629 Hester Avenue by alleging (1) a tracking device showed he frequented the residence; (2) his name was on the tax and water bills; and (3) his bank statements were mailed to that address.

15

These facts show there is a fair probability evidence relating to his role in the drug trafficking organization would be found at 3629 Hester Avenue. As stated in Kapordelis,

> [t]he justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning and hiding fruits of a crime.

569 F.3d at 1310 (quoting Green, 634 F.2d at 226).

### F. The Leon Good Faith Exception Applies If the Warrants Were Invalid for the Reasons Cited by Defendants, Which They Are Not

Even if the Court were to conclude the search warrants were constitutionally deficient, the good faith exception to the exclusionary rule applies under United States v. Leon, 468 U.S. 897 (1984). The exclusionary rule deters Fourth Amendment violations by preventing use of evidence seized by an illegal search. Martin, 297 F.3d at 1312. The Leon good faith exception allows evidence introduction of evidence seized by an illegal search if "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon good faith exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Leon, 468 U.S. at 923. Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well-trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid.  Id.

Here, there is no evidence of false information or reckless disregard of the truth.  Nor is there evidence the issuing judge "wholly abandoned" a detached and neutral role in issuing the warrant.  Finally, the warrants are not so facially deficient in any respect, especially with regard to the issue of probable cause, that the executing officers could not reasonably presume them to be valid.  In sum, even if probable cause to support issuance of the warrants had not been established, the Leon good faith exception would still bar application of the exclusionary rule.  Leon also applies to Investigator Concepcion's inadvertent failure to sign five of the six identical affidavits.  See Henry, 939 F. Supp. 2d at 1289-90 (applying Leon good faith exception because officer's failure to sign affidavit was inadvertent and judge issued warrant).

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress be **DENIED**.  (Doc. nos. 94, 162, 179.)

SO REPORTED and RECOMMENDED this 11th day of March, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA